No. 109,240

In the Matter of DAVID M. DRUTEN, *Respondent.*

(301 P.3d 319)

Opinion filed May 24, 2013.

*Alexander M. Walczak,* Deputy Disciplinary Administrator, argued the cause, and *Stanton A. Hazlett,* Disciplinary Administrator, was with him on the formal complaint for the petitioner.

*Per Curiam:* This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, David M. Druten, of Merriam, an attorney admitted to the practice of law in Kansas in 1970.

On August 14, 2012, the office of the Disciplinary Administrator filed a formal complaint against the respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC); on October 1, 2012, the office filed a supplement to the formal complaint. The respondent did not file an answer. A hearing was held on the complaint before a panel of the Kansas Board for Discipline of Attorneys on May 16, 2012, at which the respondent did not appear. The hearing panel determined that respondent violated KRPC 1.1 (2012 Kan. Ct. R. Annot. 436) (competence), 1.3 (2012 Kan. Ct. R. Annot. 454) (diligence), 1.4(a) (2012 Kan. Ct. R. Annot. 473) (communication), 3.3(a)(1) (2012 Kan. Ct. R. Annot. 582) (candor toward tribunal), 3.4 (2012 Kan. Ct. R. Annot. 589) (fairness to opposing party and counsel), 8.1 (2012 Kan. Ct. R. Annot. 634) (knowingly false statement; failure to respond to lawful demand for information from disciplinary authority), 8.4(c) (2012 Kan. Ct. R. Annot. 643) (conduct involving misrepresentation), and Kansas Supreme Court Rule 211(b) (2012 Kan. Ct. R. Annot. 350 (failure to file answer in disciplinary proceeding).

Upon conclusion of the hearing, the panel made the following findings of fact and conclusions of law, as well as the following recommendation to this court:

## "FINDINGS OF FACT

. . . .

"5. The Kansas Supreme Court admitted the Respondent to the practice of law in the State of Kansas on June 25, 1970. On July 1, 2011, the Respondent changed his status as an attorney from an active attorney to a retired attorney.

"6. In 1996, the Missouri Supreme Court admitted the Respondent to the practice of law in the State of Missouri. The Respondent remains a licensed attorney in Missouri.

"7. On January 24, 2008, Damon Jeffries retained the law firm, Coates & Logan[,] to file suit as a result of an accident involving a building collapse. The Respondent was employed by Coates & Logan as an attorney. Coates & Logan assigned the case to the Respondent.

"8. On September 21, 2009, three days before the statute of limitations expired, the Respondent filed a petition on behalf of Mr. Jeffries in the District Court of Scott County, captioned *Damon Todd Jeffries v. Lucas Metal Works*, case number 00012. The court later stated:

'The petition was two pages long with three counts: (1) negligence (2) products liability and (3) loss of consortium. The pleading was as bare bones of a petition that could possibly pass muster for liberally construed notice pleadings.'

Prior to filing suit, the Respondent failed to thoroughly investigate the accident which led to Mr. Jeffries' injuries.

"9. On December 17, 2009, opposing counsel took Mr. Jeffries' deposition. The Respondent represented Mr. Jeffries at the deposition. During the deposition, opposing counsel asked Mr. Jeffries whether the concrete had been tested. Mr. Jeffries testified regarding this matter at the hearing on the formal complaint, as follows:

'Q. And were you asked a question by Mr. Spahn concerning the cement strength and whether testing had been done?

'A. Yes, sir.

'Q. Can you tell us about that, the questioning and what occurred thereafter?

'A. Well, me and Mr. Druten, in some of our first hearings—or first conversations at my house, I had told him that I had had concrete testing done on the project. I had a friend out of Kansas City do the concrete testing. He was moonlighting. He did this as a profession. His main thing was, you know, he couldn't lose his job, didn't charge me anything. When I would come to Kansas City, I would bring cylinders up to him. He would test them then give me a call back, said, you know, your strength's good.

'Q. Excuse me. You said he could lose his job. Was that because he was moonlighting?

'A. Yes, sir.

'Q. Okay. And his employer did not permit it?

'A. I'm going to—

'Q. Or he didn't know?

'A. He didn't know.

'Q. Okay.

'A. So I would bring samples to him. Mr. Druten was well aware of this at the very beginning of the case. So at the deposition of December 17th, I was under the understanding when Mr. Spahn asked me the question, "Did Michael & Sons do concrete testing," and the first thing I done was look at Dave and—

'Q. Dave is who?

'A. Mr. Druten. Excuse me. And I said, "Can we take a break?" And so we stopped, we went into another room, and I asked Mr. Druten, I said, "Well, you know, what do I say here?" I had a very tight stance that I was not going to divulge the man that had did the testing for me. And Mr. Druten looked at me and said, "Well you're going to say what you want to say, so go ahead." Went back in the room, I answered the question that there was not any concrete testing done.

'Q. Okay. Now, after, did you have a conversation with Mr. Druten at the conclusion of your deposition?

'A. Yes, sir.

'Q. Did this subject come up?

'A. I remember we were sitting there talking and something was brought up about how I did, and he gave me a letter grade of an A minus.

'Q. A minus meaning how well you—

'A. How well I performed.

'Q. During the questioning, during the deposition?

'A. Yes.

'Q. At any time did Mr. Druten suggest to you or ask you to correct your statement to either Mr. Spahn, the attorney for Lucas Metals, or file any type of paperwork concerning your questions—the question and answer as to the cement testing?

'A. No, sir.

'Q. Nothing was said.

'A. Repeat the question again, sir.

'Q. Nothing further was said by Mr. Druten with regard to this.

'A. No, sir.'

"10.    Neither the Respondent nor Mr. Jeffries ever corrected or explained the answer to opposing counsel or to the court.

"11.    The Respondent failed to respond to discovery requests and court orders. On August 10, 2010, the court issued a memorandum decision and order detailing the history of difficulties in this case and, ultimately, dismissing Mr. Jeffries' suit. Specifically, the court stated:

'2.    The defendant, on October 15, 2009, filed a motion for [a more] definite statement and, in the alternative, a motion to dismiss. The gist of the defendant's motion was to seek more information as to how the defendant was alleged to be liable for injuries to the plaintiffs. This matter was heard in Scott County on November 6, 2009, by Judge Quint. Judge Quint apparently denied the

motions of the [defendant,] telling the parties to flesh out the allegations through discovery. It is noted that the court has not been able to find an actual journalization of this matter in its cursory review of the file, only judge's notes in the official file.

'3. On November 24, 2009, Judge Quint held a discovery conference via telephone. In that hearing it was ordered that plaintiffs would disclose their expert witness by April 1, 2010 and defendant would do likewise by June 1, 2010.

'4. Subsequent to the November 24 ruling by Judge Quint, the defendant again filed a motion regarding a lack of information concerning facts supporting the plaintiff's allegation of fault in the defendant. This time the motion was concerned with a lack of any answers to discovery requests. The matter was heard by Judge Wurst on February 1, 2010. Judge Wurst, among other things, ruled that the plaintiff was ordered to fully answer in writing and under oath interrogatories 19 and 20. The plaintiff was further directed to comply with the defendant's request for production of documents. And it was further directed that the plaintiff do all this by February 22, 2010.

'5. February 22, 2010, comes and goes without compliance by the plaintiff. The defendant filed yet another motion to dismiss due to the plaintiff['s failure] to comply with discovery and further, his failure to comply with the court's order of February 1, 2010. During a telephone conference on this motion on the 14th day of April the plaintiff['s] attorney stated that he had been too busy with another very large case with an arduous trial, in which he lost, to tend to the discovery requirement of the instant case. The plaintiff['s] attorney stated that he was now ready to concentrate on this case and could comply with all requests for discovery by Friday of the next week.

'6. So as to[] not punish the client[] for possible dilatory acts on the part of the[] attorney, the court took the attorney-for-the-plaintiff['s] representation that the various orders of discovery complained of in the defendant's motion could be satisfied by the close of business on Friday of next week, April 23, 2010, and made the same the order of the court.

'7. The court further reset the time limits for the notification of expert witnesses. The plaintiff was ordered to designate [his] expert with copy of the expert's report on or before June 1, 2010. The defendant was likewise to designate with a copy of the report on or before August 1, 2010.

'8. The parties were advised that the above due dates and time limits [were] not advisory. Serious sanctions [would] be considered upon failure to fully and completely comply with discovery requests within the limits imposed.

'9. The court also deemed it proper to assess attorney fees to the plaintiff[] to be paid to the attorney for the defendant in the amount of $750.00 within 30 days.

'10. On the 11th day of May, 2010, the defendant filed yet again another motion to dismiss for failure to comply with the court's discovery order. The defendant also filed a motion for protective order when the plaintiff served a notice to take deposition with subpoena duces tecum on a date that the defendant's attorney had a conflict and for which the defendant was given only an eight-day[] notice.

'11. On June 4, 2010, the plaintiff filed a designation of its experts regarding losses and injuries but declined to supply any report from any of them in violation of the court's direct order. The plaintiff further failed to even name an expert for causation, again in violation of the court's direct order. On that said same day, June 4, 2010, the plaintiff filed for an extension of time to designate its expert for causation.

'12. The matter was heard by the court on the 20th day of July, 2010.

'13. Presenting problems at the hearing on the 20th of July involved the ordered answers of interrogatories by the plaintiff and requests for production. The plaintiff's attorney had represented to the court at the last hearing that he was going to visit with his client and obtain the answers and had done so and supplied them to the defendant. However, it appears that the answers were unsworn and contained only the signature of the plaintiff's attorney. All attorneys in this action and the court are aware that only the signature of the plaintiff's attorney will not suffice. When asked by the court why the plaintiff had not signed the answers the plaintiff's attorney proceeded to tell the court that he had been involved in a very large case and difficult trial and had not had time to follow through. When reminded that such was offered at the last hearing as reason for not complying but that it was represented to be then completed and he could not attend to this case, the attorney for the plaintiff replied that he had no explanation. The attorney for the plaintiff also offered that he had at that moment an affidavit signed by his client attesting to the interrogatories. When asked by the court why that had not already been sent to the defendant's attorney, the plaintiff's attorney stated that he had no explanations.

'14. Other presenting problems involved an only partial designation of experts to be used by the plaintiff and no expert reports from any of them. No explanation was offered for any of these deficiencies except perhaps that fact that he had not yet been able to [depose] the defendant's witness or witnesses. The court can only speculate why those depositions were required before even the economic physical injury expert witness reports could be prepared. The court would surely expect the plaintiff to have a reasonable handle on such issues as the plaintiff was injured almost three years before this case was filed. The court also notes that the short notice for the deposition sought by the plaintiff was not valid notice and the short notice for subpoena duces tecum was also not valid notice. Further, if there had been a hint of cooperation by the plaintiff in the setting of this deposition, the court may have taken a dif-

ferent view of the matter. But, there was not. There was seemingly only a unilateral setting of the deposition during a time when the defendant's attorney was trying to cooperate and choose a date that would be advantageous to both.

'15.   In short, nothing that was ordered to be done by the court at the time of the last hearing was done or completed by the plaintiff with absolutely no explanation forthcoming by the plaintiff.

'16.   K.S.A. 60-237(b)(2) provides a [series] of sanctions to be imposed. The first sanction is to declare a matter for which discovery is sought to be designated as true. This does not fully fit the situation at hand. The situation at hand is one in which the defendant has repeatedly asked the plaintiff to produce and delineate facts to support the plaintiff's claim. The court instead [of] using this specific sanction [s]imply ordered the plaintiff to cooperate with discovery [on] several occasions. Which he did not.

'17.   The second possible sanction listed in K.S.A. 60-237(b)(2) is not allowing the offending party to challenge anything the offended party presents along the line of the matter about which discovery was not forthcoming. This, in the instant case, is tantamount to dismissal as the plaintiff has not cooperated with even the most basic and foundational discovery sought by the defendant, to-wit: what is the factual basis for your claims. To avoid the use of this sanction and the resulting dismissal, the court had again ordered the plaintiff to cooperate with discovery and further ordered the payment of attorney fees.

'18.   The third possible sanction listed in K.S.A. 60-237(b)(2), the final and most serious option, is to strike the pleading of offending [sic] party, staying proceedings until compliance is had, or dismissal. As the discovery sought, the factual basis for the plaintiff's suit and claim for damages, is absolutely foundational and nothing else can proceed in an orderly fashion without needless repetition of discovery activity, it would serve no purpose to simply stay the proceedings until discovery is complied with. Matters have been stayed long enough simply by the plaintiff's failure to comply with discovery requests. Striking the pleadings about which discovery is being sought would be tantamount to a dismissal. This leaves the court with overtly dismissing the case for failure to comply with discovery requests and orders. And it would appear such would be proper.

'19.   The court would perhaps take a slightly different approach had the plaintiff's attorney demonstrated any inclination to comply. H[is] promises to deliver interrogatory answers within a week of the hearing on the same in February w[ere] apparently hollow in that he utterly failed to deliver any answers signed by the plaintiff. And this was after his representation that he was making or would make a trip to see his client to obtain the answers. Additionally, his representation at the July hearing that he had an affidavit signed by the plaintiff to support the interrogatories and would tender the same to the defendant did not solve any problems as he apparently had the affidavit for some time but still had not supplied it to the defendant. He had made promises to the court

before. He had ample time between the filing of the motion by the defendant to deliver such a document to the defendant, but apparently without any excuse had failed to do so. The court is also acutely aware that at the hearing on the 20th of July that the plaintiff's attorney asserted that he had been preoccupied with another extremely difficult case as at least a part of the reason he had not complied with the court's last orders regarding discovery. The court pointed out to the attorney for the plaintiff that the same excuse was proffered at the February 26th hearing and the attorney for the plaintiff had further represented that such was then behind him. He had stated that he could not concentrate on the instant case. To have the same excuse presented at the next hearing five months or so on down the line, leaves the court to question the resolve of the plaintiff's attorney to be absolutely forthright with the court.

'20.   It has been nearly a year since the matter was filed. There have been four hearings held in this matter regarding discovery and lack of cooperation in discovery matters essential to the progress of this case. None of the efforts of the court have been apparently successful in getting the attention of the plaintiff's attorney. It is an extremely serious matter to dismiss a case for lack of cooperation of an attorney for a party in the case. But, there does not appear to be anything that this court can do to gain the attention of the plaintiff. Specific and direct orders and assessment of attorney fees seem to have failed. In the face of continuous delays and a lack of forthrightness in counsel regarding the reasons for delays and representations of what will take place that did not take place, the court is not left with any option other the dismissal.

'21.   This case is dismissed pursuant to K.S.A. 60-237(b)(2)(C) for repeatedly failure to cooperate and comply with the lawful discovery orders of the court and further, as per the conditions of K.S.A. 60-241(b), this dismissal shall be without prejudice.

'22.   No further journalization of this matter shall be required.

'IT IS SO FOUND AND ORDERED.'

"12.   On August 23, 2010, the Respondent filed a motion for reconsideration. However, the Respondent failed to cite any statutes or submit a brief in support of his motion. On September 7, 2010, the court took up the Respondent's motion for reconsideration. On October 12, 2010, the court issued a memorandum decision and order, denying the Respondent's motion for reconsideration. In its memorandum, the court stated:

'2.   In any event, after review of the case file, all of the foregoing proceedings in this matter, and the transcript of the hearing on the motion to reconsider, the court is satisfied that the correct decision has been [made] and the decision complained of should not be altered or amended.

'3.   It is frustratingly noted that one of the issues of discovery that could have been incredibly easy to correct, that being a supplying of sworn answers to interrogatories, was still not corrected even with all of the documents presented to the court at the time of the hearing on the instant motion to recon-

sider. And this after time and time again the attorney for the plaintiff asserting that he had a sworn affidavit from this client attesting to the answers to the interrogatories. Such has never been presented at any time to or even been seen by either the defendant or the court.

'4.    It is also noted that some of the documents the plaintiff's attorney presented to the court at the hearing as evidence of all he had done in the case were seen by the defendant's attorney for the first time at the hearing itself.

'5.    It is further noted that the plaintiff's attorney stated emphatically at the hearing on his motion to reconsider that he had never had a malpractice claim. The court is not sure why this was of importance in this case, but it did arouse the curiosity of the court. As a result, the court found the case of *In re Druten*, 267 Kan. 790, 82 P.2d 978 (1999). It is noted that the attorney for the plaintiff raised the issue, but the court is now wishing it had asked the attorney a few questions regarding the definition of malpractice he was wishing to assert. Legal malpractice, as with any tort and as the concept is generally used, would appear to involve an attorney owing a duty, damages being suffered by the person owed the duty, and the attorney being the cause of the damages. It would appear that the attorney for the plaintiff did have a prior claim for malpractice.

'6.    It is also noted that the attorney for the plaintiff asserted at the hearing on his motion to reconsider that his problems with attending to this case were in part caused by the death of his mother, apparently around the time depositions were being scheduled in this matter. (This apparently is after his problems caused by a very large case he was involved with and presented twice to the court as part of his reason for not attending to this case. See the court's previous decision in this matter.) This may be sadly so, but nothing was ever said to the defendant's attorney nor the court about this until the hearing on his motion to reconsider. And it is yet still apparent that not even the affidavit of his client verifying the answers to the interrogatories has been delivered to anyone.

'7.    It should also be noted that the court has declined to simply replace the attorney for the plaintiff with another, as was suggested by the attorney for the plaintiff. The court is not aware of any such authority residing with the court.

'8.    It should also be noted that the attorney for the plaintiff pointed out to the court that his client was seriously injured. The court has little doubt about that claim, but such is only one factor and not alone a decisive factor. The court cannot be a rubber stamp for one side or the other in personal injury cases no matter how sympathetic the court may be to the situation. The court still has an obligation to conduct a fair proceeding understanding that the defendant is not presumed to be at fault in this type of case. The statutory discovery procedures are designed to help in providing a fair proceeding. They can be bent to some degree to fit the necessity of a situation, but they cannot be ignored time and time again. At a point there is nothing left to do but what

the court did as nothing appeared to be able to get the attention of the attorney for the plaintiff.

'9.   The decision should not and will not be altered. No further journalization shall be required.'

"13.   On September 9, 2010, the Respondent filed a notice of appeal. However, the Respondent failed to docket the appeal. Thereafter, opposing counsel filed a motion to dismiss the appeal. On December 22, 2010, the court dismissed the appeal.

"14.   On October 15, 2010, the Respondent went to Mr. Jeffries['] home and informed Mr. Jeffries that the lawsuit had been dismissed. The Respondent assured Mr. Jeffries that he would be refiling the suit within six months. In February, 2011, the Respondent informed Mr. Jeffries that he was on his way to refile the suit. However, the Respondent never refiled Mr. Jeffries' suit.

"15.   From February, 2011, through early May, the Respondent set up numerous meetings with Mr. Jeffries regarding his case. However, each time, the Respondent cancelled the meetings. On May 9, 2011, the Respondent met with Mr. Jeffries at Mr. Jeffries' home. For the first time, the Respondent informed Mr. Jeffries that he had not refiled the suit. The Respondent falsely stated that he did not refile the case because when he went to refile the suit, the judge told him that if he refiled the suit, the judge would file a felony perjury charge against Mr. Jeffries for his deposition testimony.

"16.   On September 28, 2011, Mr. Jeffries filed a disciplinary complaint against the Respondent.

"17.   On December 2, 2011, the Respondent responded to Mr. Jeffries' complaint. In his response, the Respondent included false statements:

'Since Mr. Jeffries has retained counsel, [*sic*] filed a claim with the carrier and filed this complaint.I believe I am relieved of any attorney client privilege and need to address the primary reason I believe the firm no longer wanted to represent him. During his deposition, Mr. Jeffries was asked if he performed any testing of the concrete, apparently a requirement of the seller of the building or of the industry. He made the damaging admission that he had not. **He later told me that he had actually lied under oath and had, in fact, had the testing done by a friend he refused to identify. I advised him to correct the record and said he had forgotten to mention it in his deposition. He refused.** I felt I could not reveal this to the other side and advised Mr. Coates and Mr. Logan of the situation since Mr. Jeffries had admittedly lied under oath, possibly committed perjury and refused to correct the misinformation.'

"18.   On November 8, 2012, the Hearing Panel conducted a hearing on the formal complaint. The Respondent failed to appear at the hearing.

## "CONCLUSIONS OF LAW

"19.   Based upon the findings of fact, the Hearing Panel concludes as a matter

of law that the Respondent violated KRPC 1.1, KRPC 1.3, KRPC 1.4, KRPC 1.16, KRPC 3.3(a)(1), KRPC 3.4, KRPC 8.4(c), and Kan. Sup. Ct. R. 211, as detailed below.

"20.   The Respondent failed to appear at the hearing on the formal complaint. It is appropriate to proceed to hearing when a Respondent fails to appear only if proper service was obtained. Kan. Sup. Ct. R. 215 governs service of process in disciplinary proceedings. That rule provides, in pertinent part as follows:

'(a)   Service upon the respondent of the formal complaint in any disciplinary proceeding shall be made by the Disciplinary Administrator, either by personal service or by certified mail to the address shown on the attorney's most recent registration, or at his or her last known office address.

. . . .

'(c)   Service by mailing under subsection (a) or (b) shall be deemed complete upon mailing whether or not the same is actually received.'

In this case, the Disciplinary Administrator complied with Kan. Sup. Ct. R. 215(a) by sending a copy of the formal complaint and the notice of hearing, *via* certified United States mail, postage prepaid, to the address shown on the Respondent's most recent registration. The Hearing Panel concludes that the Respondent was afforded the notice that the Kansas Supreme Court Rules require.

### "KRPC 1.1

"21.   Lawyers must provide competent representation to their clients. KRPC 1.1. 'Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.' The Respondent failed to implement the thoroughness reasonably necessary for the representation of Mr. Jeffries. Additionally, the Respondent failed to competently represent Mr. Jeffries when he failed to have Mr. Jeffries sign the interrogatory answers. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 1.1.

### "KRPC 1.3

"22.   Attorneys must act with reasonable diligence and promptness in representing their clients. *See* KRPC 1.3. The Respondent failed to diligently and promptly represent Mr. Jeffries by repeatedly failing to timely respond to discovery requests and comply with the court's orders. Because the Respondent failed to act with reasonable diligence and promptness in representing his client, the Hearing Panel concludes that the Respondent violated KRPC 1.3.

### "KRPC 1.4

"23.   KRPC 1.4(a) provides that '[a] lawyer shall keep a client reasonably informed about the status of a matter.' In this case, the Respondent violated KRPC 1.4(a) when he failed to timely inform Mr. Jeffries regarding the status [of] the suit. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 1.4(a).

## "KRPC 3.3

"24.    KRPC 3.3(a)(1) provides that '[a] lawyer shall not knowingly make a false statement of material fact or law to a tribunal.' The Respondent made false statements of material fact to the Court when he stated that he had complied with the discovery requests—knowing that Mr. Jeffries had not signed the interrogatory answers and when he provided reasons for failure to comply with the discovery requirements. Because the Respondent provided false information to the Court, the Hearing Panel concludes that the Respondent violated KRPC 3.3(a)(1).

## "KRPC 3.4

"25.    According to KRPC 3.4, a lawyer shall not:

. . . .

'(b)    falsify evidence, counsel or assist a witness to testify falsely, or offer an inducement to a witness that is prohibited by law;

'(c)    knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists;

'(d)    in pretrial procedure, make a frivolous discovery request or fail to make a reasonably diligent effort to comply with a legally proper discovery request by an opposing party;

. . . .' KRPC 3.4.

The Respondent violated KRPC 3.4 three different ways. First, the Respondent violated KRPC 3.4(b) when he assisted Mr. Jeffries in testifying falsely. Second, the Respondent violated KRPC 3.4(c) when he repeatedly failed to comply with court orders regarding deadlines. Finally, the Respondent violated KRPC 3.4(d) when he failed to comply with the defendant's discovery requests, when he failed to timely designate his expert witnesses, and when he failed to properly designate his expert witnesses by providing their reports. Thus, the Hearing Panel concludes that the Respondent repeatedly violated KRPC 3.4.

## "KRPC 8.1

"26.    Attorneys must provide accurate and honest information during the course of disciplinary proceedings. Additionally, attorneys must cooperate in disciplinary investigations.

'An applicant for admission to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

(a)    knowingly make a false statement of material fact; or

(b)    fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this rule does not require disclosure of information otherwise protected by Rule 1.6.' KRPC 8.1.

The Respondent violated KRPC 8.1(a) when he provided false information in his written response to Mr. Jeffries' initial complaint. The Respondent violated KRPC

8.1(b) when he failed to provide a written answer to the formal complaint. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 8.1.

## "KRPC 8.4(c)

"27.  'It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation.' KRPC 8.4(c). The Respondent engaged in conduct that involved dishonesty when he falsely told his client that he was refiling the [lawsuit] in February, 2011. Additionally, the Respondent also engaged in conduct that involved dishonesty when he stated in his written response to Mr. Jeffries' complaint that Mr. Jeffries **later** told him that he had, in fact, had the concrete tested. The Respondent knew prior to Mr. Jeffries' deposition that the concrete had been tested and that Mr. Jeffries did not intend to disclose that the concrete had been tested. Finally, the Respondent engaged in conduct that involved dishonesty when he stated to the court that he had complied with the discovery requirements knowing that Mr. Jeffries had not signed the interrogatory answers and when he provided reasons for failing to comply with the discovery requirements. As such, the Hearing Panel concludes that the Respondent violated KRPC 8.4(c).

## "Kan. Sup. Ct. R. 211(b)

"28.  The Kansas Supreme Court Rules require attorneys to file answers to formal complaints. Kan. Sup. Ct. R. 211(b) provides the requirements:

'The Respondent shall serve an answer upon the Disciplinary Administrator within twenty days after the service of the complaint unless such time is extended by the Disciplinary Administrator or the hearing panel.' Kan. Sup. Ct. R. 211(b).

The Respondent violated Kan. Sup. Ct. R. 211(b) by failing to file a timely written answer to the formal complaint. Accordingly, the Hearing Panel concludes that the Respondent violated Kan. Sup. Ct. R. 211(b).

## "AMERICAN BAR ASSOCIATION
## "STANDARDS FOR IMPOSING LAWYER SANCTIONS

"29.  In making this recommendation for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"30.  *Duty Violated.* The Respondent violated his duty to his client to provide competent and diligent representation and adequate communication. Also, the Respondent violated his duty to the public and the legal profession to maintain his personal integrity. Finally, the Respondent violated his duty to the legal system to comply with court orders.

"31.  *Mental State.* The Respondent knowingly and intentionally violated his duties.

"32. *Injury.* As a result of the Respondent's misconduct, the Respondent caused actual injury to Mr. Jeffries, the legal profession, and the legal system.

### "Aggravating and Mitigating Factors

"33. Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"34. *Prior Disciplinary Offenses.* The Respondent has been previously disciplined on one occasion. On July 9, 1999, the Kansas Supreme Court censured the Respondent for having violated KRPC 1.1, KRPC 1.3, KRPC 1.4, KRPC 3.2, and KRPC 8.4(c).

"35. *Dishonest or Selfish Motive.* The Respondent repeatedly engaged in dishonest conduct. As such, the Hearing Panel concludes that the Respondent's misconduct was motivated by dishonesty.

"36. *A Pattern of Misconduct.* The Respondent has engaged in a pattern of misconduct by repeatedly engaging in the same type of misconduct throughout Mr. Jeffries' case.

"37. *Multiple Offenses.* The Respondent committed multiple rule violations. The Respondent violated KRPC 1.1, KRPC 1.3, KRPC 1.4, KRPC 3.3, KRPC 3.4, KRPC 8.1, KRPC 8.4, and Kan. Sup. Ct. R. 211. Accordingly, the Hearing Panel concludes that the Respondent committed multiple offenses.

"38. *Bad Faith Obstruction of the Disciplinary Proceeding by Intentionally Failing to Comply with Rules or Orders of the Disciplinary Process.* The Respondent fail[ed] to provide a written answer to the formal complaint in this case. Additionally, the Respondent failed to appear at the hearing on the formal complaint. The Respondent's fail[ure] to provide a written answer to the formal complaint and the Respondent's failure to appear at the hearing on the formal complaint amounts to bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules and orders of the disciplinary process.

"39. *Submission of False Evidence, False Statements, or Other Deceptive Practices During the Disciplinary Process.* In his initial response to Mr. Jeffries' complaint, the Respondent provided false information. Thus, this aggravating factor also applies.

"40. *Substantial Experience in the Practice of Law.* The Kansas Supreme Court admitted the Respondent to practice law in the State of Kansas in 1970. At the time of the misconduct, the Respondent had been practicing law for more than 40 years.

"41. Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found no mitigating circumstances present.

"42. In addition to the above-cited factors, the Hearing Panel has thoroughly examined and considered the following Standards:

'4.41 Disbarment is generally appropriate when:

. . . .

    (b) a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client; or

. . . .

'5.11 Disbarment is generally appropriate when:

. . . .

    (b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that serious adversely reflects on the lawyer's fitness to practice.'

### "RECOMMENDATION

"43. At the hearing on the formal complaint, the Deputy Disciplinary Administrator recommended that the Respondent be disbarred.

"44. The Respondent's misconduct is serious and warrants [] serious discipline. Accordingly, based upon the findings of fact, [the] conclusions of law, the aggravating factors, and the Standards listed above, the Hearing Panel unanimously recommends that the Respondent be disbarred."

### DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, the discipline to be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Foster*, 292 Kan. 940, 945, 258 P.3d 375 (2011); see Supreme Court Rule 211(f) (2012 Kan. Ct. R. Annot. 350). Clear and convincing evidence is " 'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable." ' " *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009) (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]).

The respondent was given adequate notice of the formal complaint, to which he did not file an answer; he filed no exceptions to the hearing panel's final hearing report. With no exceptions before us, the panel's findings of fact are deemed admitted. Supreme Court Rule 212(c), (d) (2012 Kan. Ct. R. Annot. 368). Furthermore, the evidence before the hearing panel establishes the charged misconduct in violation of KRPC 1.1 (2012 Kan. Ct. R. Annot. 436), 1.3 (2012 Kan. Ct. R. Annot. 454), 1.4(a) (2012 Kan. Ct. R. Annot. 473), 3.3(a)(1) (2012 Kan. Ct. R. Annot. 582), 3.4

(2012 Kan. Ct. R. Annot. 589), 8.1 (2012 Kan. Ct. R. Annot. 634), 8.4(c) (2012 Kan. Ct. R. Annot. 643), and Kansas Supreme Court Rule 211(b) (2012 Kan. Ct. R. Annot. 350) by clear and convincing evidence and supports the panel's conclusions of law. We therefore adopt both the panel's findings of fact and its conclusions of law.

The only remaining issue before us is the appropriate discipline for respondent's violations. At the hearing before this court, at which the respondent did not appear, the office of the Disciplinary Administrator recommended that the respondent be disbarred. The hearing panel also recommended that the respondent be disbarred.

We agree that respondent's conduct merits disbarment.

### Conclusion and Discipline

IT Is THEREFORE ORDERED that David M. Druten be disbarred from the practice of law in the state of Kansas, effective on the filing of this opinion, in accordance with Supreme Court Rule 203(a)(1) (2012 Kan. Ct. R. Annot. 294).

IT Is FURTHER ORDERED that the respondent shall comply with Supreme Court Rule 218 (2012 Kan. Ct. R. Annot. 397) and Rule 219 (2012 Kan. Ct. R. Annot. 398).

IT Is FURTHER ORDERED that the costs of these proceedings be assessed to the respondent and that this opinion be published in the official Kansas reports.