IN THE SUPREME COURT OF THE STATE OF DELAWARE

IN THE MATTER OF:                §
                                 § No. 229, 2017
DANIEL J. McCARTHY,              §
                                 § Board Case No. 2011-055-B
Respondent.                      §

Submitted: October 18, 2017
Decided:   October 23, 2017

Before **VALIHURA**, **VAUGHN**, and **SEITZ**, Justices.

*PER CURIAM:*

This 23rd day of October 2017, it appears to the Court that the Board on Professional Responsibility has filed its Report and Recommendation in this matter under Rule 9(d) of the Delaware Lawyers' Rules of Disciplinary Procedure. The Board's Report recommends that the Respondent, a Pennsylvania lawyer who was admitted *pro hac vice* by the Delaware Superior Court to represent a doctor in a medical malpractice action,[1] be disbarred for his intentional misconduct that included the failure to disclose altered medical records and the failure to disclose

---

[1] This Court has authority to discipline non-Delaware lawyers who provide legal services in this State. *See In re Nadel*, 82 A.3d 716, 719-20 (Del. 2013); *In re Kingsley*, 950 A.2d 659, 2008 WL 2310289 at \*3 (Del. 2008) (TABLE); *In re Tonwe*, 929 A.2d 774, 781 (Del. 2007). This includes lawyers admitted *pro hac vice*. *See, e.g.*, Del. Supr. Ct. R. 71(b)(ii); Del. Super. Ct. R. 90.1(b)(ii). Further, in *In Re Tonwe*, this Court stated that:

> "We assume that the Board did not recommend disbarment, as such, on the basis that one has to be a member of the bar before one can be disbarred. The Rules do not specifically address this issue, but in at least one other jurisdiction, disbarment 'when applied to an attorney not admitted . . . to practice law, means the unconditional exclusion from the admission to or the exercise of any privilege to practice law in this State.' We adopt that definition, and conclude that disbarment is the appropriate sanction . . . ."

929 A.2d at 781 (citations omitted).

his client's fraudulent conduct and to correct her false testimony. The Board concluded that the "Respondent's actions in this matter were at best dishonest and at worst criminal which resulted in actual and potential harm to the litigants, the judicial process and the public."[2]

The Respondent, through counsel, filed objections to the Board's findings and recommendation of disbarment. The Office of Disciplinary Counsel responded to the objections, and the Respondent replied. Oral argument was held on October 18, 2017.

The Court has reviewed the matter under Rule 9(e) of the Delaware Lawyers' Rules of Disciplinary Procedure and concludes that the Board's Report should be approved. The Board's recommendation of disbarment is appropriate under these circumstances and, contrary to the Respondent's assertions, is consistent with the Court's precedent.[3]

NOW, THEREFORE, IT IS ORDERED that the Board's June 6, 2017 Report (attached hereto) is ACCEPTED. Daniel J. McCarthy is hereby

---

[2] *In re McCarthy*, No. 2011-055-B, at 24 (Del. Bd. Prof. Resp. June 6, 2017). Although the Board found, among other facts, that the "Respondent assisted his client with perpetrating a fraud" (Report at 9), the Board's Report is limited to addressing the Respondent's conduct and does not address whether there was a wider-ranging "conspiracy," as argued in the Office of Disciplinary Counsel's responsive memorandum on appeal. We similarly limit our conclusions to the Respondent's conduct.

[3] *See, e.g., In re Sullivan*, 2014 WL 982500 (Del. Mar. 7, 2014); *In re Sanclemente*, 2014 WL 644437 (Del. Feb. 14, 2014); *In re Davis*, 43 A.3d 856 (Del. 2012); *In re Clyne*, 581 A.2d 1118 (Del. 1990).

2

DISBARRED. He is unconditionally excluded from the admission to or the exercise of any privilege to practice law in this State.[4] The contents of the Board's Report shall be made public. The Office of Disciplinary Counsel shall disseminate this Order in accordance with Rule 14 of the Delaware Lawyers' Rules of Disciplinary Procedure. The Respondent shall pay the costs of these disciplinary proceedings, pursuant to Rule 27 of the Delaware Lawyer's Rules of Disciplinary Procedure, promptly upon presentation of a statement of costs by the Office of Disciplinary Counsel.

---

[4] *See In re Tonwe*, 929 A.2d at 781.

EFiled: Jun 06 2017 02:03PM EDT
Filing ID 60688741
Case Number 229,2017

# SERGOVIC CARMEAN WEIDMAN
## ⚖ McCARTNEY & OWENS, P.A. ⚖

<table>
<tr><td>John A. Sergovic, Jr.<br>David J. Weidman<br>Shannon R. Owens<br>Elizabeth L. Soucek</td><td>Website: www.sussexattorney.com<br>Email: Deirdre@sussexattorney.com</td><td>Shannon Carmean Burton<br>Deirdre A. McCartney<br>Seth L. Thompson<br>George B. Smith, of Counsel</td></tr>
</table>

June 5, 2017

Delaware Supreme Court
The Renaissance Centre, Suite 509
405 North King Street
Wilmington, DE 19801

RE:  BOARD ON PROFESSIONAL RESPONSIBILITY
IN THE MATTER OF A MEMBER OF THE BAR OF THE SUPREME COURT OF
DELAWARE, DANIEL J. MCCARTHEY.
BOARD CASE NO. 2011-055-B

To whom it may concern:

Enclosed is the fully executed Report and Recommendations of the Hearing Panel concerning the above-captioned matter.

Should you have any questions, please do not hesitate to contact me.

Sincerely,

Deirdre A. McCartney, Esquire
DE Bar No. 4290

## BOARD ON PROFESSIONAL RESPONSIBILITY
## OF THE SUPREME COURT OF THE STATE OF DELAWARE

In the Matter of a )
Member of the Bar of ) CONFIDENTIAL
the Supreme Court of )
Delaware: ) Board Case No. 2011-055-B
)
DANIEL J. MCCARTHY, )
Respondent. )
)

## REPORT AND RECOMMENDATONS OF THE HEARING PANEL

Pending before a panel of the Board on Professional Responsibility (the "Board") is a Petition for Discipline filed by the Office of Disciplinary Counsel (the "ODC") in Board Case No. 2001-055-B (the "Petition") against Daniel J. McCarthy, Esquire ("Respondent"), a member of the Bar of the Supreme Court of the State of Pennsylvania. The Petition alleged violations of Rules 3.3 (b), 3.4 (a), 3.4 (c), 4.1 (b), 8.4 (c) and 8.4 (d). Respondent, through his counsel, Charles Slanina, Esquire, filed an Answer to the Petition (the "Answer"). On June 17, 2016, ODC filed an amended petition for discipline. On July 6, 2016, Respondent filed an answer to the amended petition denying the counts alleged in the petition.

On November 2, 2016, a panel of the Board on Professional Responsibility, Deirdre A. McCartney, Esquire, Chair, D. Benjamin Snyder, Esquire and Ms. Louise Roselle ("the Panel") held a liability hearing on a petition for discipline filed by the Office of Disciplinary Counsel (ODC) in the above-captioned matter. Jennifer Kate Aaronson, Esquire, presented the petition for ODC. Charles Slanina, Esquire represented Daniel J. McCarthy, ("Respondent"). The Panel found that Respondent violated Rules 3.3 (b), 3.4 (a), 3.4 (c), 4.1 (b), 8.4 (c) and 8.4 (d) of the

1

Delaware Lawyers' Rules of Professional Conduct ("Rules"). A sanction hearing was held on December 21, 2016.

## Procedure Background

On October 24, 2016, prior to the hearing, Counsel for ODC, Respondent and panel chair held a pre-hearing teleconference to discuss the upcoming hearing. At the request of the Respondent the hearing was bifurcated and the liability portion of the hearing and the sanctions portion of the hearing were scheduled on separate days. At the liability portion of the hearing on November 2, 2016, Counsel for Respondent requested leave to amend his answer to the amended petition for discipline. ODC did not object to this request. The panel granted Respondent's request pursuant to Rule 15 (b) of the Rules of Disciplinary Procedure. At the Liability portion of the Hearing, the Panel received into evidence a joint exhibit book. The Panel also heard testimony from the Respondent and Kenneth Roseman, Esquire. Following the liability portion of the hearing, the panel concluded that Respondent had violated all of the counts in the amended petition for discipline. At the sanctions portion of the hearing, the Panel received into evidence an additional joint exhibit book. The panel also heard evidence from Kenneth Roseman, Esquire, Frank Murphy, Esquire, Kristy McCabe, Esquire, James Zeris, Esquire, Jay E. Mintzer, Esquire, Stephen Levda, Jr. and Respondent. The sanctions portion of the hearing was then conducted on December 21, 2016.

After the sanctions portion of the hearing, at the request of the hearing panel, the record was supplemented by post hearing memorandum on sanctions by Ms. Aaronson on February 14, 2017; Mr. Slanina on March 21, 2017; and Ms. Aaronson on April 3, 2017. The record was closed on April 3, 2017.

2

For the reasons stated below, the Panel finds that Respondent violated Delaware Rules 3.3 (b), 3.4 (a), 3.4 (c), 4.1 (b), 8.4 (c) and 8.4 (d) by failing to take reasonable remedial measures by failing to disclose to the tribunal his client's criminal and/or fraudulent conduct; by unlawfully concealing a document having potential evidentiary value by failing to disclose the existence of the notes; by knowingly disobeying an obligation under the rules of a tribunal; by failing to disclose a material fact when disclosure was necessary to avoid assisting a fraudulent act by a client; by engaging in conduct involving dishonesty, fraud, deceit or misrepresentation by failing to provide the notes to the plaintiff, plaintiff's attorney, or the tribunal; and by engaging in conduct that was prejudicial to the administration of justice by failing to disclose the notes and the panel recommends a sanction of disbarment.

**Facts**

The record in this proceeding consists of the testimony of witnesses at the hearing, exhibits submitted in connection with the hearing and other submissions of the parties. The transcript of the liability portion of the hearing is cited hereinafter, as "Tr. at_____." At the liability portion of the hearing, the parties admitted joint exhibits. The joint exhibits admitted at the liability portion of the hearing are cited hereinafter, as "Ex at_____." The transcript of the sanctions portion of the hearing is cited hereinafter, as "S.H. Tr. at_____." The parties admitted joint exhibits at the sanctions portion of the hearing. The joint exhibits admitted at the sanctions portion of the hearing are cited hereinafter, as "S.H. Ex. At_____."

Respondent was admitted to the Pennsylvania bar in 1984. S.H. Tr. at 84. Respondent was admitted pro hac vice to represent Dr. Phyllis James in connection with a medical negligence claim in Wilson v. James. *See* Tr. at 93 and Ex. 25. One of the issues in the case was

3

the extent of the jaundice on the baby at the time he was examined by Dr. James. Tr. 94-96. The central issue in the case was the care that Dr. James rendered to the baby on July 21, 2006. Tr. at 97.

During the litigation, plaintiff's counsel (Kenneth Roseman, Esquire) served Respondent on behalf of Dr. James with discovery requests. Tr. at 27. Plaintiff's interrogatories asked "Have you signed any written statements which you have made concerning this matter?". Tr. at 28. On November 12, 2007, Respondent filed responses which indicated that there were no written statements other than those in the medical chart. Tr. at 28 and Ex. 5b. Plaintiff's request for production asked for "copies of any and all writings in your possession or available to you identified or referred to in any way in your answers to Plaintiff's interrogatories." Tr. at 28. On November 12, 2007, Respondent filed responses and enclosed a copy of the medical chart. Tr. at 29 and Ex. at 5c. Respondent on behalf of Dr. James never supplemented the discovery responses. Tr. at 30. Respondent received the altered medical records from Michelle Montague's counsel before the deposition of Dr. James on September 4, 2008. Tr. 98-99 and Ex. 9.

Plaintiff's counsel subsequently represented Dr. James in a bad faith and legal malpractice claim against the insurance company and Respondent. Tr. at 32. During discovery in that litigation, Plaintiff's counsel learned for the first time about the existence of the altered medical records that were never produced during the medical negligence litigation. Tr. at 33-34. In the first altered record, Michelle Montague (Dr. James' physician assistant) changed the location of the yellowing on the baby from the abdomen to the sternum. See. Ex. 1, Ex. 2 and Tr. at 34-35. In the second altered record, Dr. James added a sentence indicating that she had instructed the mother to monitor and call the office immediately with any changes because an older sibling had been treated for jaundice and the baby was at increased risk. See Ex 3, Ex. 4

4

and Tr. at 35-36. The altered medical records were of significant evidentiary value from the perspective of plaintiff's counsel and impacted the amount of the jury verdict. Tr. at 36-39. Respondent agreed that the care rendered by Dr. James on July 21, 2006 was the crux of the case. Tr. at 97.

Dr. James testified at her deposition that the office records produced in her discovery responses were her office records even though she had previously reviewed the altered records with her counsel. Ex. 9 at 14 (52:53). She further testified that she hadn't reviewed anything other than the medical chart in preparation for the deposition. *See* Tr. at 120 and Ex 9 at 2 (2:3). Respondent testified that he did not believe that Dr. James' testimony was inaccurate. Tr. at 121. Dr. James testified at her deposition that she didn't know whether or not Michelle Montague's note was her original note even though she had reviewed the altered note with her counsel prior to her deposition. Ex. 9 at 18 (66:67). Dr. James further testified that her office note was written on July 26, 2006 at 4:00 p.m., even though she added the last sentence at a later date. Tr. at 116-119. Respondent testified that he did not believe his client's statement was misleading. Tr. at 118. Respondent was also present at the deposition of Michelle Montague and did not correct the deposition transcript or update discovery responses when she testified that the office records produced were a complete record of her examination. Tr. at 3-4.

Respondent did not correct the pretrial stipulation which stated that the exhibits included the office records of New Castle Family Care. Ex. 22. The office records produced during discovery and admitted during trial did not include the altered medical records. Tr. at 58. At trial, Dr. James testified that the yellowing was not in the face and had not progressed to the sternum. *See* Tr. at 61-62 and Ex. 24-B at 95-97. Dr. James further testified that she had given the mother instructions to call her if the condition worsened due to the family history of jaundice. *See* Tr. at

5

63-64 and Ex. 24-B at 100. Plaintiff's counsel believes that Dr. James testimony regarding the location of the jaundice and the instructions to the mother negatively impacted the jury's verdict. Tr. at 65-66. Respondent also highlighted the mother's failure to follow Dr. James' instructions in his closing argument. Tr. at 67-69. Plaintiff's counsel believes that if the altered medical records were produced it would have impacted the outcome of the trial and the verdict. Tr. at 78-79.

Respondent testified during the hearing that he did not think that the altered medical records needed to be produced at the time of the litigation. Tr. at 100. Respondent further testified that he now would have produced those records. Tr. at 100 and 128. Respondent testified that he was aware of what Rule 26 says regarding the requirement to supplement responses, but did not think that duty included the duty to provide the altered medical records. Tr. at 107-108. Respondent testified that he also did not believe that it was necessary to produce them before Dr. James' deposition. Tr. at 111-112. Respondent conceded that the office visit (the subject of the altered records) was the primary issue in the case. Tr. at 114-115. Respondent testified that one of the reasons why he did not produce the altered records was that it would have hurt his client's credibility. Tr. at 128. Respondent had over a year between when he acquired the records and trial on March 22, 2010 to produce the records. S.H. Tr. at 155-156 and Ex. 24.

## Standard of Proof

The allegations of professional misconduct set forth in ODC's petition must be established by clear and convincing evidence. (Disc. Proc. Rule 15 (c))

6

**Violations of the Rules**

ODC's petition alleges that Respondent violated six separate rules of the Delaware Lawyer's Rules of Professional Conduct (the "Rules"). The panel finds that Respondent violated each Rule alleged in the petition for the reasons which follow:

**Count One: Respondent violated Rule 3.3 (b) by failing to take reasonable remedial measures by failing to disclose to the tribunal his client's criminal and/or fraudulent conduct.**

Rule 3.3 (b) provides: "(b) A lawyer who represents a client in an adjudicative proceeding and who knows that a person intends to engage, is engaging or has engaged in criminal or fraudulent conduct related to the proceeding shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal." Respondent was aware of medical records altered by his client, yet failed to produce them during discovery. Tr. 98-99. Respondent had reviewed them with his client prior to her deposition, yet allowed his client to testify falsely at her deposition concerning the medical records. *See* Tr. at 120, Ex 9 at 2 (2:3), Ex. 9 at 14 (52:53). Respondent further allowed his client to testify falsely at trial concerning the medical records. *See* Tr. at 63-64, Ex. 24-B at 96-97 and 100 and S.H. Tr. at 138.[1]

---

[1] Perjury is defined under Delaware law as follows: Perjury in the third degree: "A person is guilty of perjury in the third degree when the person swears falsely. Perjury in the third degree is a class A misdemeanor." 11 *Del. C.* § 1221. Perjury in the second degree: "A person is guilty of perjury in the second degree when the person swears falsely and when the false statement is:

(1)  Made in a written instrument for which an oath is required by law; and

(2)  Made with intent to mislead a public servant in the performance of official functions; and

(3)  Material to the action, proceeding or matter involved. Perjury in the second degree is a class F felony." 11 *Del. C.* § 1222. Perjury in the first degree: "A person is guilty of perjury in the first degree when the person swears falsely and when the false statement consists of testimony and is material to the action, proceeding or matter in which it is made. Perjury in the first degree is a class D felony." 11 *Del. C.* § 1223.

7

Respondent did not disclose his client's false testimony during the deposition, following the deposition, prior to trial or at trial. Respondent failed to take reasonable remedial measure to disclose his client's criminal and/or fraudulent conduct to the tribunal.

**Count Two: Respondent violated Rule 3.4 (a) by unlawfully concealing a document having potential evidentiary value by failing to disclose the existence of the notes.**

Rule 3.4 (a) provides: "A lawyer shall not (a) unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value. A lawyer shall not counsel or assist another person to do any such act." Respondent unlawfully concealed the altered medical records by failing to disclose the existence of the altered medical records despite being aware of the documents potential evidentiary value. S. H. Tr. at 136-137. Notably, the altered medical records were never produced by Respondent. Plaintiff's counsel learned for the first time about the altered medical records from discovery responses received from Preferred Professional Insurance Company in the bad faith litigation lawsuit. Tr. at 32-33. It was clear, however, that Respondent was aware during the course of the medical malpractice lawsuit that the medical chart had been altered. Ex. at 11.

**Count Three: Respondent violated Rule 3.4 (c) by knowingly disobeying an obligation under the rules of a tribunal.**

Rule 3.4 (c) provides "A lawyer shall not (c) knowingly disobey an obligation under the rules of a tribunal, except for an open refusal based on an assertion that no valid obligation exists." Respondent was aware of the requirements of Rule 26 to supplement discovery responses. Despite being aware of the requirements, Respondent intentionally failed to supplement his discovery responses when he became aware of the existence of the altered medical records. S. H. Tr. at 107.

8

**Count Four: Respondent violated Rule 4.1 (b) by failing to disclose a material fact when disclosure was necessary to avoid assisting a fraudulent act by a client.**

Rule 4.1 (b) provides "In the course of representing a client a lawyer shall not knowingly: (b) fail to disclose a material fact when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client, unless disclosure is prohibited by Rule 1.6." Respondent intentionally failed to disclose the existence of the altered medical records. S. H. Tr. at 107. Respondent also failed to correct his client's deposition and trial testimony when he knew that her testimony was false. S. H. Tr. at 106-107, 137-138. Respondent was aware that the treatment the baby received on July 26, 2006 was the crux of the case. Tr. at 97. Respondent was also aware as of September 2, 2008 and before his client's deposition that the medical records from July 26, 2006 were altered, yet failed to disclose them at any point during the litigation. Tr. at 99-100. Respondent assisted his client with perpetrating a fraud by failing to disclose the existence of altered medical records, a material fact in the medical malpractice action where the care provided was a central issue in the case.

**Count Five: Respondent violated Rule 8.4 (c) by engaging in conduct involving dishonesty, fraud, deceit or misrepresentation by failing to provide the notes to the plaintiff, plaintiff's attorney, or the tribunal.**

Rule 8.4 (c) provides: "It is professional misconduct for a lawyer to: (c) engage in conduct involving dishonestly, fraud, deceit or misrepresentation." Respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation when he failed to disclose the existence of the altered medical records throughout the course of the litigation. S. H. Tr. at 106-107, 137-138. Respondent intentionally failed to disclose the altered medical records and was aware that the altered medical records would have made his client more culpable and would have been supportive of Plaintiff's case. Tr at 102-103. Respondent's conduct was dishonest and deceitful.

9

**Count Six: Respondent violated Rule 8.4 (d) by engaging in conduct that was prejudicial to the administration of justice by failing to disclose the notes.**

Rule 8.4 (d) provides: "It is professional misconduct for a lawyer to: (d) engage in conduct that is prejudicial to the administration of justice." Respondent engaged in conduct that was prejudicial to the administration of justice when he failed to disclose the existence of the altered medical records. S. H. at 107. Respondent instead made the determination that the altered medical records did not have any evidentiary value, despite his knowledge of discovery rules. S. H. Tr. at 150.

## Rationale for Recommended Sanction

At the Hearing, the ODC contended that the presumptive sanction in this matter is disbarment. The Respondent, through his counsel, contended that the presumptive sanction in this matter is a public reprimand. For the reasons which follow, the panel recommends that Respondent be disbarred. In making its recommendation, the Panel has utilized the four-part framework set forth in the ABA Standards for Imposing Lawyer Sanctions (1991 as amended February 1992) ("ABA Standards"), as required in *In re Steiner*, 817 A.2d 793, 796 (Del. 2003). To promote consistency and predictability in the imposition of disciplinary sanctions, the Delaware Supreme Court looks to the ABA Standards. *See, In re Doughty*, 832 A.2d 724, 735-736 (Del. 2003) (citations omitted). A preliminary determination of the appropriate sanction is made by assessing the first three prongs of the test: (1) the ethical duty violated; (2) the lawyer's state of mind; and (3) the actual or potential injury caused by the lawyer's misconduct. *See, In re Steiner*, 817 A.2d 793, 796 (Del. 2003). Once the preliminary determination is made, the fourth prong addresses whether an increase or decrease in the preliminary sanction is justified because of the presence of mitigating or aggravating factors. *Id.*

10

## 1. The Ethical Duties Violated

As previously recited, the ODC alleged, and the Panel determined that the Respondent committed misconduct in violation of Professional Rules of Conduct Rules 3.3 (b) (by failing to take reasonable remedial measures by failing to disclose to the tribunal the client's criminal and/or fraudulent conduct), 3.4 (a) (by unlawfully concealing a document having potential evidentiary value by failing to disclose the existence of the notes), 3.4 (c) (by knowingly disobeying an obligation under the rules of a tribunal), 4.1 (b) (by failing to disclose a material fact when disclosure was necessary to avoid assisting a fraudulent act by a client), 8.4 (c) (by engaging in conduct involving dishonesty, fraud, deceit or misrepresentation by failing to provide the notes to the plaintiff, plaintiff's attorney, or the tribunal) and 8.4 (d) (by engaging in conduct that was prejudicial to the administration of justice by failing to disclose the notes) Under the ABA Standards, this misconduct constituted violations of duties owed by the Respondent to the public and legal system. Rules 3.3 (b), 3.4 (a), 3.4 (c), 4.1 (b), 8.4 (c) and (d)). *See* ABA Standards 5.0 and 6.0.

## 2. State of Mind

The ODC contends that Respondent's state of mind was knowing and intentional. The Respondent contends that the Respondent's state of mind was knowing. The Panel finds that the Respondent's mental state was intentional. "Knowledge" is the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result. ABA Standards, Definitions. "Intent" is the conscious objective or purpose to accomplish a particular result. ABA Standards, Definitions. Respondent intentionally chose not to disclose the existence of the altered medical records in order to protect

11

his client's credibility among other reasons. Tr. at 127-128, 152-153. Respondent further intentionally chose to avoid correcting his client's false testimony at her deposition and at trial.

## 3. Actual or Potential Injury Caused by Respondent's Misconduct

The Panel finds Respondent's conduct caused actual and potential harm to the Plaintiff, the Court, the legal system and the public. "Injury" is harm to the client, the public, the legal system, or the profession which results from a lawyer's misconduct. ABA Standards, Definitions. "Potential Injury" is the harm to the client, the public, the legal system or the profession that is reasonably foreseeable at the time of the lawyer's misconduct, and which, but for some intervening factor or event, would probably have resulted from the lawyer's misconduct. ABA Standards, Definitions. Respondent caused injury and/or potential injury to the Plaintiff when he failed to take reasonable remedial measures by failing to disclose to the court his client's false deposition and trial testimony, by unlawfully concealing a document having potential evidentiary value by failing to disclose the existence of the altered medical notes. There was testimony from Plaintiff's counsel that the altered medical records would have had probable evidentiary value. Plaintiff's counsel further testified that the failure to disclose the altered medical records likely impacted the results of the trial and the verdict for the plaintiff.

Respondent caused actual and/or potential injury to the legal system and the public by knowingly disobeying an obligation under the rules of a tribunal when he failed to supplement his discovery responses and by failing to disclose a material fact when disclosure was necessary to avoid assisting a fraudulent act by a client by failing to correct the deposition or trial testimony of his client that he knew to be false. Respondent caused actual and/or potential injury to the plaintiff, the legal system and the public engaging in conduct involving dishonesty, fraud, deceit or misrepresentation by failing to provide the altered medical records to the plaintiff,

12

plaintiff's attorney, or the tribunal and by engaging in conduct that was prejudicial to the administration of justice by failing to disclose the altered medical records.

Respondent's actions resulted in actual or potential harm by wasting judicial resources. There was testimony that the case likely would have settled earlier had the altered medical records been disclosed. As a result of the failure to disclose, a bad faith/malpractice claim was litigated and settled. As a further result of the failure to disclose, a fraud/civil conspiracy case was litigated and settled. Prior to both cases settling, the Court, litigants and attorneys involved spent countless hours and funds litigating the claims.

## 4. Presumptive Sanction

In the Panel's view, analysis of the ethical duties violated by the Respondent, the Respondent's state of mind and the actual and potential for injury caused by Respondent's misconduct raise a presumptive sanction of disbarment. The ethical duties violated direct the Panel to the following factors contained in the ABA Standards: 5.11, 6.11 and 6.21 for violations of Rule 3.3 (b), 3.4(a), 3.4 (c), 4.1 (b), 8.4 (c) and 8.4 (d). Where, as in this matter, the conduct involves acts with serious or potentially serious injury to a party, or causes significant or potentially significant adverse effect on the legal proceeding, these provisions point generally to a disbarment as an appropriate sanction. *See* ABA Standards 5.11, 6.11 and 6.21. Disbarment is generally appropriate when a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice. ABA Standard 5.11.

Disbarment is generally appropriate when a lawyer, with the intent to deceive the court, makes a false statement, submits a false document, or improperly withholds material

13

information, and causes serious injury to a party, or causes a significant or potentially significant adverse effect on the legal proceeding. ABA Standard 6.11. Disbarment is generally appropriate when a lawyer knowingly violates a court order or rule with the intent to obtain a benefit for the lawyer or another, and causes serious injury or potentially serious injury to a party or causes potentially serious interference with a legal proceeding. The presumptive sanction must then factor in the presence or absence of any mitigating or aggravating factors.

## 5. Aggravating and Mitigating Factors

### Aggravating Factors

ABA Standard 9.22 sets forth the following non-exhaustive list of aggravating factors:

(a) prior disciplinary offenses;

(b) dishonest or selfish motive;

(c) a pattern of misconduct;

(d) multiple offenses;

(e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;

(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;

(g) refusal to acknowledge wrongful nature of conduct;

(h) vulnerability of victim;

14

(i) substantial experience in the practice of law;

(j) indifference to making restitution;

(k) illegal conduct, including that involving the use of controlled substances.

(ABA Standard § 9.22)

### A. Prior Disciplinary Offenses

There is no evidence in the record that this aggravating factor exists.

### B. Dishonest or Selfish Motive

There is evidence in the record of a dishonest motive. Respondent withheld a portion of the medical record which contained altered medical records made by his client, a physician, whom he was defending in a medical malpractice case. When Respondent learned of the altered records he did not supplement his client's discovery responses, despite being aware of the requirements under Rule 26 to supplement. *See* Tr. at 30 and Tr. at 107.

In addition, after discussing the existence of the records with his client just prior to her deposition, he did nothing to correct the deposition transcript when his client falsely testified that she didn't know whether or not Ms. Montague's note produced as part of the medical chart was the original note. *See* Tr. at 108-109 and Ex. 9 at 18 (66:67). Respondent also did not correct the deposition transcript when his client falsely testified that the July 21, 2006 office note was written at 4:00 p.m. See Tr. at 21 (78:79). Respondent did not correct the deposition transcript when his client falsely testified that the medical records that had been produced were a copy of the office records. Ex. 9 at 14 (52:53).

15

Respondent was clearly aware of the existence and potential evidentiary value of the additional/and or altered records as he notified the insurance carrier PPIC of their existence. *See* Ex. at 11 and Ex. at 19. Respondent testified that he believed that the medical records that were not produced in the underlying medical negligence case and should have been produced. S. H. Tr. at 89-90. Respondent also did not correct the medical records by the time that the pretrial stipulation was filed and represented that the incomplete chart without the altered records were the office records of New Castle Family Care. Ex. at 22.

## C. Pattern of Misconduct

There is not sufficient evidence in the record of a pattern of misconduct. Respondent does not have a prior disciplinary record. The misconduct here relates to a single case.

## D. Multiple Offenses

There is evidence in the record that this aggravating factor of multiple offenses exists. The panel found that Respondent violated six different Rules of Professional Conduct. Respondent failed to supplement discovery responses and failed to disclose the existence of altered medical records. Respondent also failed to correct false deposition testimony and/or take sufficient remedial measures. Respondent further failed to take sufficient remedial measures when his client testified falsely at trial.

## E. Bad Faith Obstruction of the Disciplinary Process

There is no evidence in the record that this aggravating factor exists.

## F. Submission of False Evidence or False Statements During the Disciplinary Process

There is no evidence in the record that this aggravating factor exists.

16

## G. Refusal to Acknowledge Wrongful Nature of Conduct

There is evidence in the record that this aggravating factor exists. Respondent in his testimony refused to acknowledge that he would have been required under the Discovery Rules to disclose or supplement his responses with the altered medical records. He further did not acknowledge that he had a duty to take sufficient remedial measures when his client testified inaccurately at her deposition and at trial. Respondent did acknowledge that he would have done things differently today, but his testimony fell short of acknowledging the wrongful nature of his conduct.

## H. Vulnerability of Victim

There is evidence in the record to support this aggravating factor. The Plaintiff in the underlying medical negligence action was an infant who has suffered permanent brain injuries and disabilities.

## I. Substantial Experience in the Practice of Law

There is evidence in the record to support this aggravating factor. Respondent testified that he was admitted to the Pennsylvania bar in 1984. S. H. Tr. at 84. Respondent has been an attorney for thirty-three years. Respondent's testimony was unrebutted.

## J. Indifference to Making Restitution

There is no evidence in the record that this aggravating factor exists.

## K. Illegal Conduct, Including that Involving the Use of a Controlled Substance

There is evidence that this aggravating factor exists. By failing to disclose the existence of the altered medical records, Respondent assisted his client in concealing evidence and

17

perpetrating a fraud on the legal system. Respondent further assisted his client in committing fraudulent conduct when he did not take remedial measures in conjunction with his client's deposition testimony and trial testimony when he knew such testimony to be false.

## Mitigating Factors

ABA Standard 9.32 sets forth the following non-exhaustive list of factors to be considered in mitigation:

(a) absence of a prior disciplinary record;

(b) absence of a dishonest or selfish motive;

(c) personal or emotional problems;

(d) timely good faith effort to make restitution or to rectify consequences of misconduct;

(e) full and free disclosure to disciplinary board or cooperative attitude toward proceedings;

(f) inexperience in the practice of law;

(g) character or reputation;

(h) physical disability;

(i) mental disability or chemical dependency including alcoholism or drug abuse when:

   (1) there is medical evidence that the Respondent is affected by a chemical dependency or mental disability;

   (2) the chemical dependency or mental disability caused the misconduct;

   (3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and

   (4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely;

(j) delay in disciplinary proceedings;

(k) imposition of other penalties or sanctions;

(l) remorse;

(m) remoteness of prior offenses.

(ABA Standard § 9.32)

18

A. Absence of a Prior Disciplinary Record

There is evidence in the record that this mitigating factor exists. Respondent does not have a prior disciplinary record.

B. Absence of a Dishonest or Selfish Motive

As discussed under aggravating factors, there is evidence of a dishonest or selfish motive. This mitigating factor does not apply.

C. Personal or Emotional Problems

There is no evidence in the record that this mitigating factor exists.

D. Timely Good Faith Effort to Make Restitution or to Rectify Consequences of Misconduct

There is no evidence in the record that this mitigating factor exists.

E. Full and Free Disclosure to Disciplinary Board and Cooperative Attitude toward Proceedings

There is evidence in the record that this mitigating factor exists. Respondent offered unrebutted testimony that Respondent was cooperative with the disciplinary process.

F. Inexperience in the practice of law

There is no evidence in the record that this mitigating factor exists. As discussed in the aggravating factors, Respondent has substantial experience in the practice of law.

G. Character or Reputation

19

There is evidence in the record to support this mitigating factor. Respondent offered testimony from Kristy McCabe, James Zeris, Jay E. Mintzer and Stephen Levda in support of his good character and reputation. Ms. McCabe testified that she worked with Respondent at the same law firm from 2007 to 2016 and that Respondent was her supervisor for the last six years of her time at the firm. S.H. Tr. at 45. Ms. McCabe testified that she believes Respondent to be an honest, loyal and ethical person. S.H. Tr. at 46.

Mr. Zeris testified that he first met Respondent in law school and had worked with him a number of years at Mintzer Sarowitz Zeris Ledva and Meyers. S.H. Tr. 52 and 53. Mr. Zeris testified that Respondent's character and reputation was impeccable and that he was admired by the associates that he worked with over the years. S.H. Tr. 54. Mr. Mintzer testified that he has known Respondent since the late 1990's. S. H. Tr. 65. Mr. Mintzer testified that he believed that Respondent had the highest character, morals and ethics. S. H. Tr. 66-67. Mr. Ledva testified that he has known Respondent since the mid 1980's. S. H. Tr. 73. Mr. Ledva testified that he has a high opinion of Respondent's character and reputation. S. H. Tr. 74. The panel finds the testimony of Ms. McCabe, Mr. Zeris, Mr. Mintzer and Mr. Levda to be credible and accepts their testimony as evidence of Respondent's good character and reputation.

H. Physical Disability

There is no evidence in the record that this mitigating factor exists.

I. Mental Disability or Chemical Dependency

There is no evidence in the record that this mitigating factor exists.

J. Delay in Disciplinary Proceedings

20

There is no evidence in the record that this mitigating factor exists.

## K. Imposition of other penalties or sanctions

There is insufficient evidence in the record that this mitigating factor exists. Although, Respondent contends that there have been other penalties or sanctions because Respondent's malpractice carrier settled a claim on his behalf, there is no evidence in the record that Respondent personally contributed to that settlement. S. H. Tr. at 61-62.

## L. Remorse

There is insufficient evidence in the record that this mitigating factor exists. Although, Respondent contends that he is remorseful, as discussed in the aggravating factors, Respondent still refuses to acknowledge the wrongful nature of his conduct. Respondent did testify that he regretted not disclosing the records and that he has thought about his decision since then, his testimony fell short of acknowledging that the altered medical records should have been disclosed. Respondent never disclosed the altered medical records in the underlying litigation and it was not until the records were disclosed by a third party in discovery during subsequent litigation that he acknowledged their existence. Respondent further never self reported to the ODC.

## M. Remoteness of Prior Offenses

There is no evidence in the record that this mitigating factor exists.

The panel finds that on balance the aggravating factors outweigh the mitigating factors. As discussed above the panel found that the following aggravating factors existed: (b) dishonest or selfish motive, (d) multiple offenses, (g) refusal to acknowledge wrongful nature of conduct.

21

h) vulnerability of victim, i) substantial experience in the practice of law, and (k) illegal conduct, including that involving the use of controlled substances. As discussed above the panel found that the following mitigating factors existed: (a) the absence of a prior disciplinary record, (e) full and free disclosure to disciplinary board or cooperative attitude toward proceedings, and (g) character or reputation.

The intentional concealment of the altered medical records and the failure to take remedial measures to correct false deposition and trial testimony is dishonest. In addition, Respondent had multiple opportunities to disclose the existence of the altered medical records or correct or counsel his client regarding the inaccurate testimony, yet failed to do so. Instead, he assisted his client with concealing the altered medical records and did not take any steps to correct the record when he knew that his client testified falsely. Further, Respondent in his testimony continued to try to justify his actions in his failure to disclose the altered medical records or to take remedial measures, instead of acknowledging the wrongfulness of that conduct. The victim in this matter was particularly vulnerable and Respondent had substantial experience not only in the practice of law, but in litigating these type of cases and should have recognized the potential evidentiary value of the altered medical records to Plaintiff's counsel. In fact, Ms. McCabe who had previously worked for Respondent recognized it without hesitation. S.H. Tr. at 51.

### Conclusion

The Panel believes that recommending disbarment in this matter is consistent with Delaware Supreme Court precedent. "[T]he objectives of any lawyer sanction should be to protect the public, to advance the administration of justice, to preserve confidence in the legal

22

profession, and to deter other lawyers from similar misconduct." *In re Doughty*, 832 A.2d 724, 735-736 (Del. 2003) (citations omitted). The facts in this case are similar to the facts in *In re Melvin*, 807 A.2d 550 (Del. 2002), where Melvin destroyed documents with potential evidentiary value and attempted to downplay the severity of his misconduct in his testimony before the Board. Similarly, Respondent concealed the altered medical records when he knew that they had potential evidentiary value and would have at a minimum adversely impacted his client's credibility. Respondent in his testimony before the Panel also failed to admit the wrongfulness of his conduct and instead attempted to make technical arguments about why disclosure was not required under discovery rules and why the evidence likely would not have impacted the amount recovered by Plaintiff at trial. It is disingenuous to suggest that a medical record altered by a physician and her staff concerning her treatment of the patient would not be relevant in a medical negligence action alleging that the physician's treatment of the patient was negligent and violated the standard of care. "The preservation of evidence, regardless of its subjective value, is fundamental to the orderly administration of justice." *Id.* Like Melvin, Respondent also had substantial experience in the practice of law as an aggravating factor. However, unlike Melvin where the attorney's deceitful conduct was in connection with his personal domestic dispute matter without harm to a client, here Respondent's conduct involved actual and potential injury to the litigants, the public and the judicial process. Respondent intentionally concealed evidence in a case and took no remedial measures in spite of his client's false testimony.

Other jurisdictions have found that disbarment was appropriate when lawyers have intentionally concealed evidence and assisted their clients with testifying falsely. See *In re David M. Druten*, 301 P. 3d 319 (Kan. 2013) (disbarment where attorney intentionally concealed evidence, assisted his client with providing false testimony at deposition, failed to comply with

23

multiple discovery requirements and failed to appear at the disciplinary hearing). This Court has emphasized the important role of attorneys as officers of the Court "[t]his Court does not treat lightly its officers who violate their fundamental duties to the Court, the legal community, and society." *In the Matter of John P. Clyne, Jr.*, 581 A.2d 1118, 1127 (Del. 1990) (disbarment where attorney neglected client cases, failed to cooperate with disciplinary counsel, made misrepresentations to the Supreme Court and attempted to cover up the misrepresentations). Respondent's actions in this matter were at best dishonest and at worst criminal which resulted in actual and potential harm to the litigants, the judicial process and the public. This Court has emphasized the importance of honesty in the legal profession "[w]hen there can be no reliance upon the word or oath of a party, he is, manifestly, disqualified, and when such a fact satisfactorily appears the court[s] not only have the power, but it is their duty to strike the party from the roll[l] of attorneys." *In the Matter of Michael R. Davis*, 43 A.3d 856, 867 (Del. 2012) (attorney disbarred for engaging in the unauthorized practice of law during suspension and

24

making misrepresentations in his reinstatement questionnaire concerning his conduct in a single-vehicle accident).

Based on the foregoing considerations, the Panel recommends as action of the Board that the sanction of disbarment be imposed upon the Respondent, including the imposition of costs of these disciplinary proceedings.

Respectfully submitted.

_Deirdre McCartney_

Deirdre A. McCartney, Esquire, Chair
Date: 1/2/17

_____

D. Benjamin Snyder, Esquire
Date: _____

_____

Louise Roselle
Date: _____

making misrepresentations in his reinstatement questionnaire concerning his conduct in a single-vehicle accident).

Based on the foregoing considerations, the Panel recommends as action of the Board that the sanction of disbarment be imposed upon the Respondent, including the imposition of costs of these disciplinary proceedings.

Respectfully submitted,

_____
Deirdre A. McCartney, Esquire, Chair
Date: _____

_____
D. Benjamin Snyder, Esquire
Date: 6/2/17

_____
Louise Roselle
Date: 6 | 4 | 17

25